# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### CASE MANAGEMENT TRACK DESIGNATION FORM

Selina Gray : CIVIL ACTION
v. :
National Railroad Passenger : NO.
Corporation a/k/a "AMTRAK" :

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.  ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits.  ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.  ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos.  ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.)  ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.  (X)

1-8-2014
**Date**

William L. Myers, Jr.
**Attorney-at-law**

Plaintiff Selina Gray
**Attorney for**

215-988-1229
**Telephone**

215-988-0433
**FAX Number**

bill@myerslafferty.com
**E-Mail Address**

(Civ. 660) 10/02

## UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.

Address of Plaintiff: 4520 McKay Street, Lake Monroe, FL 32747

Address of Defendant: 30th Street Station, Philadelphia, PA 19104

Place of Accident, Incident or Transaction: Amtrak Train Station, Sanford Florida
(Use Reverse Side For Additional Space)

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?
(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a))   Yes☐   No☒

Does this case involve multidistrict litigation possibilities?   Yes☐   No☒
RELATED CASE, IF ANY:
Case Number: _____ Judge _____ Date Terminated: _____

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?
   Yes☐   No☒

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?
   Yes☐   No☒

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?
   Yes☐   No☒

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?
   Yes☐   No☒

CIVIL: (Place ✔ in ONE CATEGORY ONLY)

A. Federal Question Cases:

1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☒ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☐ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☐ All other Federal Question Cases
    (Please specify) _____

B. Diversity Jurisdiction Cases:

1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury (Please specify)
7. ☐ Products Liability
8. ☐ Products Liability — Asbestos
9. ☒ All other Diversity Cases
   (Please specify) _____

## ARBITRATION CERTIFICATION
(Check Appropriate Category)

I, William L. Myers, Jr., counsel of record do hereby certify:

☑ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;

☐ Relief other than monetary damages is sought.

DATE: 1-8-2014 _____   38702
                    Attorney-at-Law                    Attorney I.D.#

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 1-8-2014 _____   38702
                    Attorney-at-Law                    Attorney I.D.#

CIV. 609 (5/2012)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| SELINA GRAY | NATIONAL RAILROAD PASSENGER CORPORATION a/k/a "AMTRAK" |

**(b)** County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant _____
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
WILLIAM L. MYERS, JR. - MYERS LAFFERTY LAW OFFICES, P.C.
1515 Market Street, Suite 810, Philadelphia, PA 19102
215-988-1229

Attorneys *(If Known)*
UNKNOWN

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1 U.S. Government Plaintiff
- [ ] 2 U.S. Government Defendant
- [ ] 3 Federal Question *(U.S. Government Not a Party)*
- [X] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)* and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [X] 4 |
| Citizen of Another State | [X] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 422 Appeal 28 USC 158 | [ ] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 365 Personal Injury - Product Liability | [ ] 690 Other | [ ] 423 Withdrawal 28 USC 157 | [ ] 400 State Reapportionment |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability | [ ] 367 Health Care/ | | | [ ] 410 Antitrust |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Slander | Pharmaceutical Personal Injury | | **PROPERTY RIGHTS** | [ ] 430 Banks and Banking |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 330 Federal Employers' | Product Liability | | [ ] 820 Copyrights | [ ] 450 Commerce |
| [ ] 151 Medicare Act | Liability | [ ] 368 Asbestos Personal | | [ ] 830 Patent | [ ] 460 Deportation |
| [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans) | [ ] 340 Marine | Injury Product Liability | | [ ] 840 Trademark | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | **SOCIAL SECURITY** | [ ] 480 Consumer Credit |
| [ ] 160 Stockholders' Suits | [ ] 350 Motor Vehicle | [ ] 370 Other Fraud | [ ] 710 Fair Labor Standards Act | [ ] 861 HIA (1395ff) | [ ] 490 Cable/Sat TV |
| [ ] 190 Other Contract | [ ] 355 Motor Vehicle Product Liability | [ ] 371 Truth in Lending | [ ] 720 Labor/Management Relations | [ ] 862 Black Lung (923) | [ ] 850 Securities/Commodities/ Exchange |
| [ ] 195 Contract Product Liability | [ ] 360 Other Personal Injury | [ ] 380 Other Personal Property Damage | [ ] 740 Railway Labor Act | [ ] 863 DIWC/DIWW (405(g)) | [ ] 890 Other Statutory Actions |
| [ ] 196 Franchise | [ ] 362 Personal Injury - Medical Malpractice | [ ] 385 Property Damage Product Liability | [ ] 751 Family and Medical Leave Act | [ ] 864 SSID Title XVI | [ ] 891 Agricultural Acts |
| | | | [ ] 790 Other Labor Litigation | [ ] 865 RSI (405(g)) | [ ] 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | [ ] 791 Employee Retirement Income Security Act | | [ ] 895 Freedom of Information Act |
| [ ] 210 Land Condemnation | [ ] 440 Other Civil Rights | **Habeas Corpus:** | | **FEDERAL TAX SUITS** | [ ] 896 Arbitration |
| [ ] 220 Foreclosure | [ ] 441 Voting | [ ] 463 Alien Detainee | | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| [ ] 230 Rent Lease & Ejectment | [ ] 442 Employment | [ ] 510 Motions to Vacate Sentence | | [ ] 871 IRS—Third Party 26 USC 7609 | [ ] 950 Constitutionality of State Statutes |
| [ ] 240 Torts to Land | [ ] 443 Housing/ Accommodations | [ ] 530 General | | | |
| [ ] 245 Tort Product Liability | [ ] 445 Amer. w/Disabilities - Employment | [ ] 535 Death Penalty | **IMMIGRATION** | | |
| [ ] 290 All Other Real Property | [ ] 446 Amer. w/Disabilities - Other | **Other:** | [ ] 462 Naturalization Application | | |
| | [ ] 448 Education | [ ] 540 Mandamus & Other | [ ] 465 Other Immigration Actions | | |
| | | [ ] 550 Civil Rights | | | |
| | | [ ] 555 Prison Condition | | | |
| | | [ ] 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [X] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
Diversity
Brief description of cause:
Personal injury incurred while working for Amtrak.

## VII. REQUESTED IN COMPLAINT:

[ ] CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $ _____

CHECK YES only if demanded in complaint:
JURY DEMAND: [X] Yes [ ] No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____   DOCKET NUMBER _____

DATE
1-8-14

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

SELINA GRAY                        : CIVIL ACTION
4520 Mckay Street                  :
Lake Monroe, FL 32747,           :
                                          :
            Plaintiff,              :
                                          : JURY TRIAL DEMANDED
       v.                              :
                                          :
NATIONAL RAILROAD PASSENGER      :
CORPORATION a/k/a "Amtrak"         :
30TH Street Station                   : DOCKET NO:
Philadelphia PA, 19104,            :
                                          :
              Defendant.           :

---

## COMPLAINT

      Plaintiff Selina Gray, by and through her undersigned counsel, Myers Lafferty Law

Offices, P.C., for her Complaint against defendant National Railroad Passenger Corporation,

avers as follows:

### The Parties

      1.     Plaintiff, Selina Gray, is an adult citizen and resident of the State of Florida,

residing at 4520 Mckay Street, Lake Monroe, Florida, 32747.

      2.     Defendant, National Railroad Passenger Corporation (hereinafter, "Amtrak"),

is a corporate entity duly organized and existing under and by virtue of law and, at all times

material hereto, was engaged in owning and operating a line and system of railroads and rail-

road properties as a common carrier of goods and passengers for hire in interstate commerce

1

and transportation in, through and between various and several states of the union and the District of Columbia, and doing business and having a principal place of business in Philadelphia, Pennsylvania.

3.     At all times material hereto and for some time prior thereto, Mrs. Gray was employed by Amtrak as a Vacation Relief Coach Cleaner, performing her duties in the furtherance of interstate commerce and transportation by railroad.

### Nature of the Action, Jurisdiction and Venue

4.     This action is brought pursuant to the Federal Employers' Liability Act, 45 U.S.C. §§51, et seq.

5.     This Court has federal question jurisdiction over this action pursuant to 28 U.S.C. §1331. This Court also has jurisdiction over this action pursuant to 45 U.S.C., Section 56, which vests the State and Federal Courts with concurrent jurisdiction over FELA claims.

6.     This Court has personal jurisdiction over Amtrak, which carries on a continuous and systematic part of its general business within the Eastern District of Pennsylvania. Amtrak employs hundreds of people within the Eastern District of Pennsylvania and maintains hundreds of miles of active railroad right of way over which it operates numerous passenger trains daily.

7.     Venue is appropriate in the Eastern District pursuant to 28 U.S.C. §1391(b)(1) and (c). Amtrak is subject to personal jurisdiction here and so resides in the Eastern District.

## COUNT I: FEDERAL EMPLOYERS' LIABILITY ACT

8.     Defendant Amtrak was, at the time of the accident and injuries herein alleged, and is now, doing business within the jurisdiction of this Court as an interstate common carrier of passengers and freight for hire by rail into and from the various States of the Union.

9.     At all times material hereto, Mrs. Gray was working in furtherance of interstate commerce.

10.     AMTRAK owed a duty under the Federal Employers Liability Act (FELA) to its employees, including Mrs. Gray, to act as a reasonable employer to provide Mrs. Gray with a safe place to work, and this duty included the obligation to provide Mrs. Gray with the tools and equipment necessary to perform her job safely.

11.     As part of its duty under the FELA to act reasonably to provide its employees with a safe place to work, AMTRAK had an affirmative obligation to train Mrs. Gray how to safely perform her job.

12.     As part of its duty under the FELA to act reasonably to provide its employees with a safe place to work, AMTRAK had an affirmative obligation to provide sufficient manpower to enable employees to perform their jobs safely.

13.     As part of its duty under the FELA to act reasonably to provide its employees with a safe place to work, AMTRAK had an affirmative obligation to warn its employees, including Mrs. Gray in potential dangers associated with their job tasks.

14.     On or about January 27, 2011, and while in the course of her employment with Amtrak in Sanford, Florida, as a vacation relief coach cleaner, Mrs. Gray was directed by her superior Pat Keogh to clean approximately two hundred twenty-foot high windows in the rail station, each window 2-3 times.  To perform this task, Amtrak provided Mrs. Gray only with a squeegee and a three gallon pump, which she had to lift to spray the upper windows.  This was the first time Mrs. Gray was ever asked to perform this task, and she was provided no training, no rules guidance, no supervision and no help.  The task required Mrs. Gray to engage in eight hours of over-the-shoulder work with the squeegee and the pump.

15.     While doing this work, Mrs. Gray told Mr. Keogh that her arm "felt like it was dead," and he directed her to "shake it out."

16.     Mrs. Gray's injuries were caused by AMTRAK's negligent violation of the Federal Employers' Liability Act in that AMTRAK, through its agents, servants, employees:

   (a)   Amtrak failed to provide Mrs. Gray with any type of ladder or scaffolding, or other tools and equipment with which to safely perform the job task;

   (b)   Amtrak required Mrs. Gray to perform her job task in an unsafe manner;

   (c)   Amtrak failed to provide adequate manpower;

   (d)   Amtrak failed to train Mrs. Gray on the job task;

4

(e)     Amtrak failed to warn Mrs. Gray of the dangers associated with over-the shoulder cleaning hundreds of twenty-foot tall windows using only a squeegee;

(f)     Failed to analyze the job task to discover the dangers it posed; and

(g)     Failed to promulgate and enforce safe work methods and rules regarding the job task.

15.     As a result of Amtrak's negligent violation of the duties it owed to Mrs. Gray pursuant to the FELA, Mrs. Gray was caused to suffer injuries to: (a) The right shoulder, including right shoulder rotator cuff impingement syndrome, right shoulder bicipital tendinitis, adhesive capsulitis and rotator cuff tendinopathy, right lateral epicondylitis, right rotator cuff tendinosis, subacromial and subdeltoid bursal inflammation, inflammation in the acromioclavicular joint, brachial neuritis; (b) Disc herniations at C3-4 and C4-5, disc bulging at C5-6, spinal stenosis; (c) Muscle strain/sprain, injury to her right elbow; (d) The right wrist, including severe carpal tunnel syndrome; (e) The right hand, including numbness and tingling in her radial three fingers; (f) The thoracic spine; (g) Left rotator cuff impingement syndrome, bicipital tendinitis, and subacromial subdeltoid bursitis.

16.     To address her injuries, Mrs. Gray has had to undergo numerous surgical and other procedures, including: (a) Right C4-5 and right C3-4 destruction via thermal ablation of the paravertebral facet joints; (B) Left C5-6 laminotomy and foraminotomy decompression of the nerve root; (C) Right shoulder tenotomy; (D) Left shoulder tenotomy; (E) Right carpal tunnel release; (F) Right shoulder arthroscopy with anterior stabilization, subacromial de-

compression, partial claviculectomy, rotator cuff repair and biceps tenodesis; (G) Ultra-sound-guided blood injection to her left shoulder; (H) Numerous ultrasound-guided injec-tions into her right shoulder, right scapula, right wrist, and left shoulder; (I) Ultrasound-assisted arthrogram to her right shoulder; and (J) Ultrasound-guided blood injection to her left shoulder. Furthermore, Mrs. Gray will likely require additional surgeries on both shoul-ders in the near future.

16.     Immediately following her injury, Mrs. Gray sought medical treatment at Cen-tral Florida Regional Hospital, at 1401 West Seminole Boulevard, Stanton, Florida, where she was diagnosed with muscle strain of the right shoulder and was referred for to Centra Care at 4451 West 1st Street, Sanford, Florida.

17.     At Centra Care, Mrs. Gray was evaluated and diagnosed with sprain and strain of the shoulder/arm, elbow/forearm, cervical/neck, and thoracic spine, and was prescribed anti-inflammatory and muscle relaxant medications and was instructed to return for reevalua-tion on January 31, 2011.

18.     On January 28, 2011, Mrs. Gray returned to Centra Care due to exacerbated symptoms and was diagnosed with sprain of the arm/shoulder, was prescribed pain medica-tion in place of the muscle relaxer, and was instructed to return for reevaluation on January 31, 2011.

19.     Mrs. Gray returned to Centra Care on January 31, 2011 for reevaluation and was diagnosed with sprain of the arm/shoulder, was prescribed pain and anti-inflammatory medications, was instructed to use a sling, and was referred to physical therapy.

20.     Because the treatment and medication by Centra Care was not redressing her pain, Mrs. Gray sought emergency medical treatment on February 1, 2011, at Central Florida Regional Hospital and then, on February 3, 2011 sought treatment with Dr. Charles E. Kollmer of New Smyrna Orthopedics on February 3, 2011.

21.     At Dr. Kolmer's office, Mrs. Gray underwent X-rays of her cervical spine and right shoulder, which produced findings consistent with spasm in the cervical spine and showed a slightly high-riding humeral head in her right shoulder.  Mrs. Gray also underwent an ultrasound of her right shoulder, which showed mild thickness of the tendon, bursitis, and mild hypoeachoic regions along the rotator cuff consistent with tendinosis or irritation of this tendon, and underwent an ultrasound-guided injection to her right shoulder. Dr. Kollmer diagnosed Mrs. Gray with Cervical Strain, Right Rotator Cuff Impingement Syndrome, Right Shoulder Bicipital Tendinitis, and Right Carpal Tunnel Syndrome at this time and prescribed pain, muscle relaxing and stomach acid reducing medications, gave her a wrist brace, and referred Mrs. Gray to physical therapy.

22.     Mrs. Gray began physical therapy at Ability Sports Medicine and Rehabilitation on February 10, 2011 and participated in seven physical therapy sessions through March 3, 2011.

21.     On February 21, 2011, Dr. Kollmer prescribed Mrs. Gray an H-Wave Homecare System in attempt to manage Mrs. Gray's acute symptoms.

22.     Mrs. Gray had follow-up treatment with Dr. Kollmer on March 5, 2011, where she underwent an ultrasound of her right shoulder, which produced findings consistent with partial rotator cuff tear and tendinopathy, and right wrist, which showed a notch change along the median nerve consistent with carpal tunnel syndrome.  At this time, Dr. Kollmer diagnosed Cervical Strain, Right Rotator Cuff Impingement Syndrome, Right Shoulder Bicipital Tendinitis, and Right Carpal Tunnel Syndrome and instructed Mrs. Gray to continue using her wrist brace.  Dr. Kolmer also prescribed pain, muscle relaxing and stomach acid reducing medications, referred Mrs. Gray for an EMG of the right upper extremity, and directed her to continue physical therapy.

23.     Mrs. Gray was given a referral for Biofreeze and cold packs for home use by Ability Sports Medicine and Rehabilitation on March 5, 2011in attempt to further manage and reduce Mrs. Gray's symptoms.

24.     Mrs. Gray participated in six physical therapy sessions between March 8, 2011 and March 22, 2011.

25.     Mrs. Gray had follow-up treatment with Dr. Kollmer on March 25, 2011, during which she underwent another ultrasound of her right wrist, which showed findings consistent with the ultrasound conducted on March 5, 2011.  Mrs. Gray received an ultrasound-guided injection into her right carpal tunnel.  At this time, Dr. Kollmer repeated his diagnosis

of Cervical Strain, Right Rotator Cuff Impingement Syndrome, Right Shoulder Bicipital Tendinitis, and Right Carpal Tunnel Syndrome and directed Mrs. Gray to continue physical therapy, continue taking pain, muscle relaxing and stomach acid reducing medications.  Dr. Killmer also prescribed an EMG of her right upper extremity, which was scheduled for April 7, 2011.

26.     Dr. Kollmer again prescribed Mrs. Gray an H-Wave Homecare System on March 29, 2011, in attempt to manage Mrs. Gray's acute symptoms.

27.     Mrs. Gray participated in four more physical therapy sessions at Ability Sports Medicine and Rehabilitation between April 6, 2011 and May 2, 2011.

28.     Mrs. Gray underwent an electromyography and nerve conduction velocity test on April 7, 2011, at New Smyrna Orthopedics.  The test showed that Mrs. Gray had severe carpal tunnel syndrome and dysfunction of the median nerve on the right, and mild to moderate carpal tunnel syndrome on the left.

29.     Mrs. Gray had follow-up treatment with Dr. Kollmer on May 3, 2011, at which time she underwent an ultrasound assisted arthrogram on the right shoulder, which demonstrated findings consistent with adhesive capsulitis and rotator cuff tendinopathy (partial rotator cuff tear).  At this time, Dr. Kollmer diagnosed Mrs. Gray with right shoulder pain, evidence of partial rotator cuff tear (tendinopathy), adhesive capsulitis, severe carpal tunnel syndrome on the right side, and cervical strain.  Dr. Kollmer prescribed pain, anti-

inflammatory, muscle relaxing and stomach acid reducing medications, and scheduled Mrs. Gray for right carpal tunnel release surgery on May 18, 2011.

30.     Mrs. Gray participated in physical therapy at Ability Sports Medicine and Rehabilitation on May 6, 2011 and May 10, 2011.

31.     Mrs. Gray underwent right carpal tunnel release surgery with Dr. Kollmer, at Bert Fish Medical Center, at 401 Palmetto Street, New Smyrna Beach, Florida, on May 18, 2011.

32.     Mrs. Gray had follow-up treatment with Dr. Kollmer on May 19, 2011, and was prescribed a dorsiflexion wrist splint and referred for a pain management evaluation.

33.     Dr. Kollmer again prescribed Mrs. Gray an H-Wave Homecare System on May 30, 2011, in attempt to manage Mrs. Gray's acute symptoms.

34.     Mrs. Gray sought treatment from Dr. Vinod K. Malik of PRC Associates LLC, at 2720 Rebecca Lane, Suite 104, Orange City, Florida, on June 9, 2011, for pain management.  Dr. Vinod diagnosed Mrs. Gray as having complex regional pain syndrome of the upper limb, Type I, and cervical pain.

35.     Mrs. Gray had follow-up treatment with Dr. Kollmer on June 14, 2011.  Dr. Kollmer diagnosed right carpal tunnel syndrome, post carpal tunnel release, right shoulder tendinopathy, right shoulder adhesive capsulitis and cervical strain, and instructed Mrs. Gray to continue using her dorsiflexion wrist splint and begin physical therapy again.

36.     Dr. Kollmer again prescribed Mrs. Gray an H-Wave Homecare System on July 5, 2011, in attempt to manage Mrs. Gray's acute symptoms.

37.     Mrs. Gray began physical therapy at Ability Sports Medicine and Rehabilitation on July 11, 2011 and participated in seven physical therapy sessions through August 11, 2011.

38.     Mrs. Gray had follow-up treatment with Dr. Vinod K. Malik on July 14, 2011, in which she was diagnosed with complex regional pain syndrome of the upper limb, Type I, and cervical pain, and was prescribed pain and muscle relaxing medication.

39.     On July 15, 2011, Mrs. Gray had follow-up treatment with Dr. Kollmer, who diagnosed with right shoulder tendinopathy, right shoulder adhesive capsulitis, cervical strain and right carpal tunnel syndrome, and instructed Mrs. Gray to continue physical therapy and referred for an MRI of her right shoulder.

40.     Mrs. Gray underwent an MRI of her right shoulder on July 29, 2011, at Open MRI of Sanford, at 303 West First Street, Sanford, Florida.  The MRI showed that Mrs. Gray had tendinosis of the supraspinatus tendon.

41.     Mrs. Gray underwent an MRI of her cervical spine on August 1, 2011, at Open MRI of Sanford, at 303 West First Street, Sanford, Florida.  The MRI showed that Mrs. Gray had disc bulging at C4-C5 and C5-C6.

11

42.     On August 18, 2011, Mrs. Gray had follow-up treatment with Dr. Kollmer, who diagnosed her with cervical strain, disc bulging, particularly at C5-C6, right shoulder rotator cuff impingement syndrome and right carpal tunnel syndrome.  Dr. Kollmer scheduled Mrs. Gray to undergo a tenotomy on the right shoulder on September 29, 2011 and instructed her to continue physical therapy.

43.     Mrs. Gray participated in eight physical therapy sessions at Ability Sports Medicine and Rehabilitation from August 25, 2011 through September 23, 2011.

44.     Mrs. Gray underwent a right shoulder tenotomy and ultrasound-guided injection, performed by Dr. Kollmer, at New Smyrna Orthopedics, on September 29, 2011.

45.     On October 13, 2011, Mrs. Gray had follow-up treatment with Dr. Kollmer, who performed ultrasound of the right shoulder.  Dr. Kollmer performed an ultrasound-guided injection in the right shoulder, diagnosed Mrs. Gray with a right partial rotator cuff tear and disc bulge at C5-C6 and instructed Mrs. Gray to continue with home exercises and begin electro medical stimulation.

46.     Mrs. Gray participated in thirteen physical therapy sessions at Ability Sports Medicine and Rehabilitation from October 25, 2011 through December 29, 2011.

47.     On November 23, 2011, Mrs. Gray had follow-up treatment with Dr. Kollmer, who diagnosed her with partial right rotator cuff tear, cervical strain, degenerative disc changes and disc bulging, and instructed her to continue physical therapy.

48.     On December 30, 2011, Mrs. Gray had follow-up treatment with Dr. Kollmer, who performed an ultrasound of the right scapula.  The ultrasound revealed hypoechoic areas consistent with the area of maximum irritation, and Dr. Kollmer performed an ultrasound-guided injection into the spine at the right scapula.  Dr. Kollmer diagnosed Mrs. Gray with partial right rotator cuff tear and right carpal tunnel syndrome, and instructed Mrs. Gray to continue physical therapy.

49.     Mrs. Gray underwent a functional capacity evaluation with Heidi Goff, P.T., who determined that Mrs. Gray was permanently restricted to light/limited duty, with lifting of no more than twenty pounds and no overhead activities.

50.     On February 28, 2012, Mrs. Gray had follow-up treatment with Dr. Kollmer, who diagnosed her with partial right rotator cuff tear, right carpal tunnel syndrome, and cervical strain with disc bulge.  Dr. Kollmer referred Mrs. Gray for additional physical therapy on March 7, 2012.

51.     Mrs. Gray began physical therapy at Envision Physical Therapy, Inc., at 3577 Lake Emma Road, Suite 121, Lake Mary, Florida, on March 8, 2012 and participated in eleven physical therapy sessions through April 11, 2012.

52.     On April 17, 2012, Mrs. Gray had follow-up treatment with Dr. Kollmer, who diagnosed her with cervical strain, degenerative changes, disc bulging, partial right rotator cuff tear, right carpal tunnel syndrome and evidence of right lateral epicondylitis.  Dr. Kollmer prescribed pain compound and a tennis elbow brace, and referred Mrs. Gray for cer-

13

vical epidural injections for pain and prescribed additional physical therapy and continuation of a home exercise program.

53.     Mrs. Gray participated in sixteen physical therapy sessions at Envision Physical Therapy, Inc. from May 3, 2012 through August 9, 2012.

54.     On May 29, 2012, Mrs. Gray had follow-up treatment with Dr. Kollmer, who diagnosed her with cervical strain, degenerative changes, disc bulge, partial right rotator cuff tear and right lateral epicondylitis, and prescribed pain compound and continued physical therapy.

55.     Mrs. Gray sought treatment with Winter Park Pain and Wellness, at 511 Granada Drive, Winter Park, Florida, on June 27, 2012, and was prescribed pain, anti-inflammatory and muscle relaxing medications.

56.     Mrs. Gray had follow-up treatment with Winter Park Pain and Wellness on July 16, 2016, and was prescribed pain, anti-inflammatory, muscle relaxing and sedative medications.

57.     Mrs. Gray had follow-up treatment with Winter Park Pain and Wellness on August 1, 2012, and was prescribed pain, anti-inflammatory, muscle relaxing and sedative medications. At that point, it was noted that Mrs. Gray was unable to function properly in day to day activities without the use of pain medication.

58.     Mrs. Gray underwent an MRI of her cervical spine on August 6, 2012 at Stand-Up MRI of Orlando. The MRI showed disc herniations at C3-C4, C4-C5, and C5-C6.

59.     Mrs. Gray sought treatment with Laser Spine Institute, LLC, at 3001 North Rocky Point Drive East, Suite 400, Tampa, Florida, where she was diagnosed with spinal stenosis in the cervical region, displacement of cervical intervertebral disc, and brachial neuritis or radiculitis, and prescribed pain, muscle relaxing and antibiotic medications.

60.     On August 15, 2012, Mrs. Gray underwent thermal ablation of the paravertebral facet joints at C4-C5 and C3-C4, and laminotomy/foraminotomy decompression of the nerve root at C5-C6, at the Laser Spine Institute. The surgery was performed by Dr. Vernon Raymond Morris. Mrs. Gray followed up post-operatively at the Laser Spine Institute on August 16, 2012.

61.     Mrs. Gray underwent follow-up treatment with Winter Park Pain and Wellness on August 17, 2012, where she was prescribed pain medication.

62.     On August 28, 2012, Mrs. Gray had follow-up treatment with Dr. Kollmer. She underwent an X-Ray that showed straightening of the lordotic curve in her neck, and multiple disc bulges. Dr. Kollmer prescribed anti-inflammatory medicine, started Mrs. Gray on a home exercise program, and instructed to use her soft cervical collar for up to four hours per day.

63.     Mrs. Gray had follow-up treatment with Winter Park Pain and Wellness on September 10, 2012.  It was noted that her pain level had not changed and she could not function properly in day to day activities without the use of pain medication.  Mrs. Gray's neck motion was still limited and she was prescribed pain, anti-inflammatory, muscle relaxing and sedative medications.

64.     Mrs. Gray was prescribed pain compound by Dr. Kollmer on September 24, 2012 in attempt to manage Mrs. Gray's symptoms.

65.     On September 27, 2012, Mrs. Gray had follow-up treatment with Dr. Kollmer, who diagnosed cervical strain and herniated discs, and referred her for more physical therapy.

66.     Mrs. Gray participated in five physical therapy sessions at Envision Physical Therapy, Inc. from October 1, 2012 through October 17, 2012.

67.     Mrs. Gray had follow-up treatment with Winter Park Pain and Wellness on October 9, 2012.  It was noted at this point that Mrs. Gray's pain level had not changed, that she had not shown much improvement, and that she could not function properly in day to day activities without the use of pain medication.  Mrs. Gray's neck motion was still limited and she was prescribed pain, anti-inflammatory, muscle relaxing and sedative medications.

68.     On October 25, 2012, Mrs. Gray had follow-up treatment with Dr. Kollmer, who performed an ultrasound-guided injection in her right shoulder.

69.     Mrs. Gray had follow-up treatment with Winter Park Pain and Wellness on November 5, 2012 and December 3, 2012.  It was noted during both visits that her pain level had not changed, that she had not shown any improvement since surgery, and that she could not function properly in day to day activities without the use of pain medication.   Mrs. Gray's neck motion was still limited and she was prescribed pain, anti-inflammatory, muscle relaxing and sedative medications.

70.     Mrs. Gray underwent a second functional capacity evaluation on December 5, 2012 at Ability Sports Medicine and Rehabilitation.  The FCE showed that Mrs. Gray was permanently restricted from overhead activities, was not able to lift or carry greater than 23 pounds, and was able to perform only in a less than a light-duty status.

71.     On December 27, 2012, Mrs. Gray had follow-up treatment with Dr. Kollmer, who diagnosed her with partial right rotator cuff tear and right spinal enthesopathy, and re-ferred her for physical therapy.

72.     Mrs. Gray had follow-up treatment with Winter Park Pain and Wellness on January 14, 2013 and February 11, 2013.  It was noted at both visits that her pain level had not changed and that she could not function properly in day to day activities without the use of pain medication.  Mrs. Gray's neck motion was still limited and she was prescribed pain, anti-inflammatory, muscle relaxing and sedative medications.  Additionally, Mrs. Gray was prescribed a lumbar support on January 31, 2013.

73.     On February 21, 2013, Mrs. Gray had follow-up treatment with Dr. Kollmer, who found her to have tenderness along the greater tuberosity and along the levator scapula insertion along the spine of the scapula.  Dr. Kollmer diagnosed Mrs. Gray with partial right rotator cuff tear and cervical strain with evidence of herniated discs at C3-4, C4-5, and C5-6, status post prior fasciectomy and foramintomy in August of 2012.  At this time, Mrs. Gray underwent an ultrasound study of her right shoulder and ultrasound-guided injection.

74.     At the time of the February 21, 2013 visit, Mrs. Gray reported pain and diffi-culty with her left shoulder as a result of overcompensating with her left shoulder due to her right upper extremity injuries as described above.  Mrs. Gray underwent a diagnostic ultra-sound and was diagnosed with left rotator cuff impingement syndrome, acromioclavicular joint degenerative changes and mild bicipital tendinitis. Mrs. Gray received an ultrasound-guided injection and was instructed to continue with her home exercise program.

75.     Mrs. Gray had follow-up treatment with Winter Park Pain and Wellness on March 11, 2013 and April 8, 2013.  At both visits, it was noted that her pain level had not changed and that she could not function properly in day to day activities without the use of pain medication.  Mrs. Gray was prescribed pain, anti-inflammatory, muscle relaxing and sedative medications.

76.     Mrs. Gray had follow-up treatment with Winter Park Pain and Wellness on May 6, 2013, where massage therapy was recommended and she was prescribed pain, anti-inflammatory, muscle relaxing and sedative medications.

77.     On May 16, 2013, Mrs. Gray had follow-up treatment with Dr. Kollmer, who observed cervical paraspinal muscle spasm and tenderness, decreased lateral rotation to the right side, and tenderness over the right lateral epicondyle.   Dr. Kollmer diagnosed partial right rotator cuff tear and cervical strain with evidence of herniated disc at C3-4, status post prior fasciectomy and foramintomy in August of 2012.

78.     On May 16, 2013, Mrs. Gray had follow-up treatment with Dr. Kollmer, whose examination of her left shoulder produced findings of left rotator cuff impingement syndrome, bicipital tendinitis, and acromioclavicular joint degenerative changes.

79.     Mrs. Gray had follow-up treatment with Winter Park Pain and Wellness on June 3, 2013, at which point it was noted that Mrs. Gray could not function properly in day to day activities without the use of pain medication.  Mrs. Gray she was prescribed pain, anti-inflammatory, muscle relaxing, and sedative medications.

80.     As a further result of Amtrak's negligence as averred above, Mrs. Gray had follow-up treatment with Dr. Kollmer on June 19, 2013 for continued left shoulder pain.  Dr. Kollmer reviewed the MRI of Mrs. Gray's left shoulder that was conducted on June 8, 2013 and found it to show rotator cuff tendinosis without tear, and subacromial and subdeltoid bursitis.   Dr. Kollmer diagnosed Mrs. Gray with left rotator cuff impingement syndrome, bicipital tendinitis, acromioclavicular joint degenerative changes, partial right rotator cuff tear, and cervical strain with evidence of herniated disc at C3-4, status post prior fasciotomy and laminotomy.

81.     Mrs. Gray had follow-up treatment with Winter Park Pain and Wellness on July 1, 2013 and July 29, 2013.  It was noted at both visits that Mrs. Gray could not function properly in day to day activities without the use of pain medication and her neck motion was still limited and painful.  Mrs. Gray was prescribed pain, anti-inflammatory, muscle relaxing, and sedative medications at each of these visits.

82.     Mrs. Gray had follow-up treatment with Dr. Kollmer on July 18, 2013 for continued left shoulder pain.  At this time, Mrs. Gray was diagnosed with left rotator cuff impingement syndrome, bicipital tendinitis, acromioclavicular joint changes, partial right rotator cuff tear, and cervical sprain with evidence of herniated disc at C3-4, status post fasciotomy and laminectomy.

83.     Mrs. Gray had follow-up treatment with Dr. Kollmer on August 6, 2013 for continued pain and difficulties in her right shoulder, elbow and hand.   Dr. Kollmer diagnosed degenerative changes, disc bulging, right lateral epicondylitis, and right partial rotator cuff tear.

84.     Mrs. Gray had follow-up treatment with Winter Park Pain and Wellness on August 26, 2013, at which point it was noted that she could not function properly in day to day activities without the use of pain medication and her neck motion was still limited.  Mrs. Gray was prescribed pain, anti-inflammatory, muscle relaxing, and sedative medications at this time.

85.     Mrs. Gray underwent a left shoulder tenotomy performed by Dr. Kollmer on August 27, 2013.  Additionally, Mrs. Gray underwent an ultrasound diagnostic study of her left shoulder, which produced findings of bicipital tendinitis and partial rotator cuff tear.

86.     Mrs. Gray had follow-up treatment with Winter Park Pain and Wellness on September 23, 2013, at which point it was noted that she could not function properly in day to day activities without the use of pain medication and her neck motion was still limited. Mrs. Gray was prescribed pain, anti-inflammatory, muscle relaxing, and sedative medications at this time.

87.     Mrs. Gray had follow-up treatment with Dr. Kollmer on September 27, 2013 for her right shoulder pain.  Mrs. Gray underwent an ultrasound diagnostic study of her right shoulder, and an ultrasound-guided injection.  Dr. Kollmer diagnosed right rotator cuff tear, bicipital tendinitis, shoulder pain, tendinopathy, and evidence of cervical strain.

88.     Mrs. Gray had follow-up treatment with Dr. Kollmer on October 15, 2013 for re-evaluation of her left shoulder, post tenotomy.  At this time, Mrs. Gray underwent an ultrasound diagnostic study of her left shoulder, which produced findings of rotator cuff impingement syndrome and partial rotator cuff tear.  Additionally, Mrs. Gray underwent an ultrasound-guided injection into her left shoulder. Mrs. Gray was diagnosed with rotator cuff impingement syndrome, shoulder pain, shoulder contracture, clavicle, elbow and right hand difficulties, and neck pain.

89.     Mrs. Gray had follow-up treatment with Winter Park Pain and Wellness on October 21, 2013, at which point it was noted that she could not function properly in day to day activities without the use of pain medication and her neck motion was still limited. Mrs. Gray was prescribed pain, anti-inflammatory, muscle relaxing, and sedative medications at this time.

90.     Mrs. Gray had follow-up treatment with Dr. Kollmer on November 5, 2013 for pain and difficulties, and limited range of motion and stiffness about her right shoulder. At this time, Dr. Kollmer diagnosed with right rotator cuff impingement syndrome.

91.     Mrs. Gray underwent an MRI of her right shoulder at Stand-Up MRI of Orlando. The MRI showed rotator cuff tendinosis without tear, subacromial and subdeltoid bursal inflammation, and inflammation in the acromioclavicular joint.

92.     Mrs. Gray had follow-up treatment with Winter Park Pain and Wellness on November 18, 2013, at which point it was noted that she could not function properly in day to day activities without the use of pain medication and her neck motion was still limited. Mrs. Gray was prescribed pain, anti-inflammatory, muscle relaxing, and sedative medications.

93.     On December 23, 2013, Dr. Kollmer performed right shoulder arthroscopy with anterior stabilization, subacromial decompression, partial claviculectomy, rotator cuff repair and biceps tenodesis at Bert Fish Medical Center.

94.     Mrs. Gray was reevaluated post operatively by Dr. Kollmer on December 24, 2013.  At this time, Mrs. Gray's pain pump was removed and she was noted to have decreased range of motion of the shoulder with post-surgical edema.  Mrs. Gray was instructed to continue wearing her sling with the abductor pillow in place and return in two weeks reevaluation.

95.     All of the above medical care and treatment was caused by Amtrak's negligent violation of the duties it owed to Mrs. Gray under the Federal Employers' Liability Act.

96.     As a further result of Amtrak's negligent violation of the duties it owed to Mrs. Gray under the Federal Employer's Liability Act, Mrs. Gray will continue to require medical care and treatment, and will continue to incur medical bills and expenses.

97.     As a further result of Amtrak's negligent violation of the duties it owed to Mrs. Gray pursuant to the Federal Employer's Liability Act, Mrs. Gray has suffered in the past and will continue to suffer into the future significant physical pain, mental anguish, humiliation and disfigurement, and the limitation and restriction of her usual activities, pursuits and pleasures.

98.     As a further result of Amtrak's negligent violation of the duties it owed to Mrs. Gray pursuant to the Federal Employer's Liability Act, Mrs. Gray has suffered in the past, and will continue to suffer into the future, a loss of earnings and a diminishment of her future earning capacity, as well as additional financial expenses and losses.

**WHEREFORE**, Plaintiff Selina Gray demands judgment in her favor and against defendant National Railroad Passenger Corporation, in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), together with interest, costs, fees and such other and further relief this Honorable Court and jury deem appropriate.

MYERS LAFFERTY LAW OFFICES, P.C.

BY:

William L. Myers, Jr., Esquire
PA ID: 38702
1515 Market Street, Suite 810
Philadelphia, PA 19102
(215) 988-1229

Attorneys for Plaintiff
Selina Gray

24